UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID SMITH,

    Plaintiff,                        Hon. Gordon J. Quist

v.                                                        Case No. 1:13-CV-348

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 22 years of age on his alleged disability onset date. (Tr. 103). He possesses a high school education and has no past relevant work experience. (Tr. 17). Plaintiff applied for benefits on October 15, 2009, alleging that he had been disabled since October 5, 2009, due to a learning impairment. (Tr. 103-05, 119). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 60-102). On September 22, 2011, Plaintiff appeared before ALJ Craig Petersen with testimony being offered by Plaintiff and Plaintiff's father. (Tr. 23-53). In a written decision dated December 1, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 10-18). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On February 26, 2002, Plaintiff participated in cognitive testing the results of which revealed that he possessed a verbal IQ of 62, a performance IQ of 77, and a full scale IQ of 67. (Tr. 193-94). It was noted that Plaintiff's performance on similar tests, conducted in October 1998, revealed a verbal IQ of 75, a performance IQ of 73, and a full scale IQ of 72. (Tr. 193).

Education notes dated March 5, 2002, indicate that Plaintiff was characterized as experiencing an "educable mental impairment." (Tr. 192). Educational records dated May 15, 2006, indicate that Plaintiff's "skills are below grade level" and that his "intellectual functioning is in the cognitively impaired range." (Tr. 184).

On November 11, 2009, Plaintiff completed a report regarding his activities. (Tr. 124-31). Plaintiff reported that he prepares meals daily, feeds and cares for his dog, mows the lawn, watches television, plays video games, plays cards, and listens to music. (Tr. 124-31). The following day, Plaintiff's stepmother, Crystal Smith, completed a report regarding Plaintiff's activities. (Tr. 132-39). Smith reported that Plaintiff prepares meals, feeds and cares for his dog, shops for groceries, and "is able to do all chores." (Tr. 133-35). Smith also reported that Plaintiff "hang[s] out with friends," plays video games, plays cards, attends family functions, and goes snowmobiling. (Tr. 136).

On December 15, 2009, Plaintiff participated in a consultive examination conducted by Steven Reppuhn, Ph.D. (Tr. 230-35). Plaintiff reported that he was capable of working and was presently looking for a job. (Tr. 230). Plaintiff reported that he was experiencing no physical impairments and had never participated in mental health treatment. (Tr. 230). Plaintiff reported that he enjoys playing video games, playing cards, jet skiing, snowmobiling, and snowboarding. (Tr. 232). Plaintiff reported that he takes care of all his personal needs, shops for his own food, cares for his dog, plays video games, rides his bike, and "hang[s] out." (Tr. 232). The doctor observed that "if [Plaintiff] is interested in something he can concentrate...but can be distracted if he doesn't like what he is doing." (Tr. 233). The results of a mental status examination were unremarkable. (Tr. 233-34). Plaintiff was also administered cognitive testing the results of which revealed a verbal comprehension score of 70, a perceptual reasoning score of 79, a working memory score of 83, a processing speed score of 92, and a full scale IQ score of 75. (Tr. 234). Plaintiff was diagnosed

with a history of special education and borderline intellectual functioning. (Tr. 235). Plaintiff's GAF score was rated as 63.[1] (Tr. 235).

At the administrative hearing, Plaintiff testified that he worked part time with his dad performing lawn maintenance duties. (Tr. 30). Plaintiff reported that he can "somewhat" read a newspaper and perform simple mathematic calculations. (Tr. 31-32). Plaintiff testified that he was limited by his "mental retardation and reading disorder," but did not suffer from any physical impairments. (Tr. 32-33). Plaintiff reported that he has experience repairing computers. (Tr. 34). Plaintiff reported that he performs household chores such as washing dishes, washing laundry, sweeping, cooking, and shopping for groceries. (Tr. 35-36). Plaintiff also reported that he enjoys playing cards and using Facebook. (Tr. 37-38).

Subsequent to the administrative hearing, the ALJ submitted written interrogatories to a vocational expert. (Tr. 168-72). One of the interrogatories posed to the vocational expert was a follows:

> Assume a hypothetical individual who was born on January 30, 1987, has at least a high school education, but a reading level at 5th grade level, but able to communicate in English as defined in 20 CFR 404.1564 and 416.964, and has no past relevant work experience. Assume further that this individual has the residual functional capacity (RFC) with no exertional, postural, manipulative, environmental or visual limitations; work must not involve any complex verbal or written instructions or directives; the work is limited to simple, routine and repetitive tasks free of fast-paced production requirements. The work would involve simple, work related decisions with few, if any, workplace changes with occasional interaction with co-workers, supervision and public.

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994). A score of 63 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 32.

5

(Tr. 169). In response to this hypothetical question, the vocational expert reported that there existed approximately 27,200 unskilled jobs in the State of Michigan which such a person could perform. (Tr. 169). The vocational expert further reported that if the hypothetical individual were further limited to "no public interaction," the same number of jobs would exist. (Tr. 170).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience,

---

[2]1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from borderline intellectual functioning and reading disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 12-14). The ALJ next determined that Plaintiff retained the capacity to perform work at all exertional levels subject to the following limitations: (1) his work must not involve complex verbal or written instructions or directives; (2) he is limited to simple, routine, and repetitive tasks free of fast-paced production requirements; (3) he is limited to work involving simple work-related decisions with few, if any, workplace changes; and (4) he can have occasional interaction with co-workers and supervisors, but should have no public interaction. (Tr. 14).

The ALJ found that Plaintiff had no past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational

qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ submitted interrogatories to a vocational expert.

As previously noted, the vocational expert asserted that there existed in the state of Michigan approximately 27,200 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 168-72). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

**I.      Plaintiff Does Not Meet a Listed Impairment**

Plaintiff asserts that he is entitled to disability benefits because he satisfies the requirements of section 12.05 (Mental Retardation) of the Listing of Impairments. The ALJ found that Plaintiff's impairments did not meet the requirements of this (or any other) listing.

Section 12.05 of the Listing provides, in relevant part, the following:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e.,

>the evidence demonstrates or supports onset of the impairment before age 22.
>
>The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
>OR
>
>B. A valid verbal, performance, or full scale IQ of 59 or less;
>
>OR
>
>C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
>
>OR
>
>D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>>1. Marked restriction of activities of daily living; or
>>
>>2. Marked difficulties in maintaining social functioning; or
>>
>>3. Marked difficulties in maintaining concentration, persistence or pace; or
>>
>>4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05.

Specifically, Plaintiff asserts that he satisfies sections 12.05(C). As noted above, testing performed in 1998 revealed that Plaintiff possessed a verbal IQ of 75, a performance IQ of 73, and a full scale IQ of 72. Testing performed in 2002 revealed that Plaintiff possessed a verbal IQ of 62, a performance IQ of 77, and a full scale IQ of 67. Finally, testing performed in 2009 indicated that Plaintiff possessed a verbal IQ of 70 and a full scale IQ of 75. In addition to borderline intellectual functioning, the ALJ also found that Plaintiff suffers from a reading disorder which imposes "additional and significant work-related" limitations.

Even if the Court assumes that Plaintiff satisfies the criteria articulated in subsection (C) (e.g., scored between 60-70 on an IQ test), Plaintiff must also satisfy the requirements articulated in the introductory paragraph of Section 12.05. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(A) ("[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets" section 12.05). Specifically, Plaintiff must establish that he satisfied the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05. *Cooper v. Commissioner of Social Security*, 217 Fed. Appx. 450, 451 (6th Cir., Feb. 15, 2007); *see also*, *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (to satisfy Section 12.05, the claimant must demonstrate that he experienced deficiencies in adaptive functioning prior to attaining the age of 22).

The record contains no evidence that Plaintiff experienced deficiencies in adaptive behavior or suffered from mental retardation prior to the age of 22 or at anytime after age 22. Neither Plaintiff's care providers nor any of the medical professionals who examined the record in this case concluded that Plaintiff was mentally retarded or satisfied the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05. Instead, Plaintiff has

been diagnosed as experiencing borderline intellectual functioning. As the ALJ concluded, the evidence supports the conclusion that Plaintiff suffers not from mental retardation, but from borderline intellectual functioning. As the Sixth Circuit has observed, a diagnosis of borderline intellectual functioning is inconsistent with a diagnosis of mental retardation and, therefore, precludes a finding that the requirements of Section 12.05 have been met. *See Cooper*, 217 Fed. Appx. at 451.

Plaintiff's reported activities likewise fail to support the argument that he suffers from mental retardation. *See Burrell v. Comm. of Soc. Sec.*, 2000 WL 1827799 at *2 (6th Cir., Dec. 8, 2000) (no evidence of a deficit in adaptive functioning where claimant "remained fairly active, maintains an interest in his household, and enjoys apparent satisfactory relationships with family members"); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (claimant with a 10th grade education, who worked as an oil-changer, not disabled under section 12.05); *Williams v. Sullivan*, 970 F.2d 1178, 1185 (3rd Cir. 1992) (claim of mental retardation contradicted by the fact that claimant was able to "maintain a job for most of his adult life"); 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(D) (recognizing that when evaluating mental disorders, a claimant's work history is "particularly useful" in assessing the extent of impairment).

The burden rests with Plaintiff to demonstrate that he satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). The ALJ evaluated in detail the evidence of record and determined that Plaintiff failed to meet his burden in this regard. The ALJ's decision is supported by substantial evidence.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  September 5, 2014                                      /s/ Ellen S. Carmody
                                                                                        ELLEN S. CARMODY
                                                                                        United States Magistrate Judge